JOHNSON v CITY OF DETROIT

Docket No. 105891. Argued December 9, 1997 (Calendar No. 4). Decided
June 16, 1998. Rehearing denied 459 Mich 1203.

Barbara Johnson, as personal representative of the estate of James T.
Johnson, deceased, brought a wrongful death action in the Wayne
Circuit Court against the city of Detroit, the Detroit Police Depart-
ment, and Officer Ralph Heatlie, alleging that installation of mesh
wire to cover overhead bars in the third precinct holding cell in
which the decedent was placed after he was arrested, and in which
he hanged himself, rendered it a suicide-deterrent cell. The plaintiff
further alleged that a tear in the mesh constituted a building defect
so as to avoid the defense of governmental immunity. The court,
Diane Marie Hathaway, J., granted summary disposition for the
defendants on the basis of governmental immunity. The Court of
Appeals, McDONALD, P.J., and SMOLENSKI and C. J. SINDT, JJ., affirmed
in an unpublished memorandum opinion (Docket No. 172383). The
plaintiff appeals.

In separate opinions, the Supreme Court *held*:

The plaintiff stated a claim in avoidance of governmental immu-
nity under the public building exception. The defendants were enti-
tled to summary disposition on the underlying negligence claim;
the plaintiff failed to establish that the suicide was foreseeable and,
thus, that the defendants owed a duty to prevent the suicide.

Merely because a plaintiff is able to plead a claim to avoid gov-
ernmental immunity, in this case on the basis of the public building
exception, does not necessarily mean that the defendant is liable.
Establishing a building-defect claim circumventing governmental
immunity does not negate traditional tort law principles. A plaintiff
still must demonstrate the elements of a negligence claim. In this
case, although summary disposition was improper on the ground of
governmental immunity, it is proper on the underlying negligence
claim. The uncontroverted evidence at the close of discovery and
as presented at the summary disposition proceedings showed that
defendants could not have suspected that the decedent was sui-
cidal. Consequently, there was no duty to prevent this unforesee-
able death.

Affirmed in part and reversed in part.

Chief Justice MALLETT stated further that the public building exception allows suits against governmental agencies where, inter alia, a dangerous or defective condition of the building itself is alleged to have caused injuries. In enacting the public building exception, the Legislature intended to impose a duty to maintain safety of public buildings, not necessarily safety in public buildings. The alleged defect must be a defect of the building itself and not merely a transient condition, such as accumulated grease or oil on a hallway floor or inadequate supervision in an otherwise adequate facility. A public building may be defective because of improper maintenance or repair, faulty construction, absence of safety devices, or improper design that directly contributes to the injuries. Where the essence of a tort claim is negligent supervision, a plaintiff cannot transform the claim into a building-defect claim merely because a superior building design would have improved the ability to supervise. Additionally courts must examine whether a building is defective in light of the uses or activities for which it is specifically assigned. While overhead bars in a general holding cell are not a defect, exposed overhead bars might constitute a defect in a cell specifically designed or equipped to prevent suicide by the installation of wire mesh.

Because these cells, with the installed mesh, were intended to function as suicide-deterrent cells, the public building exception applies. The plaintiff has presented evidence sufficient to establish that this suicide-deterrent cell was defective in light of its intended purpose because the mesh designed to prevent access to the overhead bars was torn away. The plaintiff also has presented evidence that the defendants had notice and a reasonable time to repair the defect and did nothing. A defect in a feature designed to protect the inmate or arrestee from his own devices comes within the building exception if the plaintiff can show that the defect was a contributing cause of the injuries. The fact that other causes also might be involved, such as inadequate supervision or the arrestee's own actions toward self-destruction, does not necessarily preclude application of the public building exception.

Justice TAYLOR, joined by Justices BOYLE and WEAVER, dissenting, stated further that the public building exception to governmental immunity is not applicable in this case. Whether there was a building defect, warranting application of the public building exception, depends on the use to which the area of the building at issue was put. A building may be safe for one use or purpose, but not for another. In the cell at issue, the standards for a nonsuicide-deterrent cell are the standards to be employed in determining whether the cell was defective. The fact that the defendant took action that

could negate a finding that it was deliberately indifferent to the safety of its detainees does not demonstrate that the intended use of the cell had changed. Nor did the decedent's use of an otherwise benign physical feature of the cell to commit suicide demonstrate that the cell itself contained a defect as contemplated by the Legislature.

Justice BRICKLEY, joined by Justices CAVANAGH and KELLY, dissenting, stated further that the grant of summary disposition to the defendant was clearly premised on the plaintiff's inability to plead in avoidance of governmental immunity. The separate issue, whether a duty was owed under these circumstances, was not addressed. Because the scope of the duty is complex and of great importance, supplemental briefing should be ordered or the case remanded to the circuit court for further proceedings.

*Lopatin, Miller, Freedman, Bluestone, Herskovic, Heilmann & Domol* (by *Richard E. Shaw*) for the plaintiff.

City of Detroit Law Department (by *Brenda M. Miller*) for the defendant.

MALLETT, C.J. We granted leave to determine whether the Court of Appeals erred in affirming summary disposition for the defendants on governmental immunity grounds. Plaintiff's decedent hanged himself on overhead bars in a police station holding cell that were exposed because wire mesh that had been placed over them to help prevent suicides had been torn away. This case presents the question whether the torn mesh constitutes a building defect within the meaning of the public building exception to the governmental tort liability act, MCL 691.1406; MSA 3.996(106). This Court has previously concluded that exposed overhead bars in a general holding cell were not a building defect, *Jackson v Detroit*, 449 Mich 420; 537 NW2d 151 (1995). This Court has also previously held that a claim could proceed under the public building exception where a cell at the Wayne

County jail, specifically designated for individuals with mental conditions, was allegedly defective because it did not contain adequate safety measures, such as adequately padded walls. *Lockaby v Wayne Co*, 406 Mich 65; 276 NW2d 1 (1979).

The plaintiff argues that the city's installation of mesh rendered these cells as cells designed to prevent suicide and that the torn mesh constituted a building defect in this particular suicide-resistant cell. I agree. Consequently, I would reverse that portion of the Court of Appeals decision upholding summary disposition for the defendants on governmental immunity grounds. Nevertheless, I would find that defendants were entitled to summary disposition on the underlying negligence claim. Because the plaintiff could not establish that the suicide was foreseeable, she could not establish that the defendants owed a duty to prevent the suicide. Consequently, I would affirm summary disposition for the defendants on this basis.

## I. FACTS AND PROCEEDINGS

Decedent, James Johnson, was a city of Detroit employee. On the afternoon of December 29, 1991, a Detroit police sergeant, on his way to work at the third precinct, saw Johnson pass a portable electric generator through an opening in a fence surrounding the Detroit Department of Public Works yard. The sergeant, after returning from the precinct with assistance, followed tracks made by a cart Johnson had used to transport the generator. The officers arrested Johnson and took him to the third precinct station.

Officer Ralph Heatlie, the individual defendant in this case, processed Johnson before placing him in a

holding cell in the felony cellblock used for tempo-
rary detention of felony prisoners awaiting arraign-
ment. Because Johnson was cooperative, Heatlie
rewarded him by placing him in a cell containing a
toilet. He first took the standard precautions of
removing Johnson's hat, gloves, belt, wallet, lighter,
and shoelaces. Tragically, however, Johnson managed
to kill himself by tying one sleeve of his sweatshirt to
an overhead horizontal bar in his cell and the other
around his neck. Officer Heatlie discovered Johnson
after hearing shouting and banging noises from the
cellblock area, made by other prisoners in cells
across from Johnson's. It took Heatlie a "short period.
Maybe a couple minutes" to return to the area
because he had to secure a prisoner that he was
working with at the time.

Efforts had been made at this precinct to prevent
hangings by welding wire mesh approximately one
and one-half inches below the overhead bars that
formed the ceiling. However, in this particular cell,
the mesh was torn away. While officials were appar-
ently aware of the torn mesh, they had not yet
repaired it. Precinct commander Leamon Wilson had
requested repairs, on an emergency basis, in a memo
to the Deputy Chief for Management Services dated
September 17, 1991, more than one hundred days
before Johnson's death. Further, Officer Heatlie, on
first becoming aware of the problem, decided to close
the cell until repairs were made. However, because of
the lengthy delay in repairing the mesh and because

this was one of only five cells containing a toilet, Heatlie decided to renew use of the cell.[1]

Plaintiff Barbara Johnson, the decedent's wife, filed this action for wrongful death, and asserted the public building exception in order to avoid a governmental immunity defense. Defendants filed their motion for summary disposition at the close of discovery pursuant to MCR 2.116(C)(7), (8) and (10).[2]

The trial court granted summary disposition for the defendants on governmental immunity grounds. MCR 2.116(C)(7). The Court of Appeals affirmed.[3] We granted leave to consider whether the torn wire mesh constitutes a building defect within the meaning of MCL 691.1406; MSA 3.996(106).[4]

## II. LAW

### A. STANDARD OF REVIEW

In reviewing a trial court's grant of summary disposition on governmental immunity grounds under MCR 2.116(C)(7), we must review the complaint to deter-

---

[1] According to documentary evidence submitted by the parties, the other four cells containing a toilet were already occupied.

[2] MCR 2.116(C)(7) allows summary disposition if

[t]he claim is barred because of release, payment, prior judgment, immunity granted by law, statute of limitations, statute of frauds, an agreement to arbitrate, infancy or other disability of the moving party, or assignment or other disposition of the claim before commencement of the action.

MCR 2.116(C)(8) permits summary disposition if "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(10) permits summary disposition if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact . . . ."

[3] Unpublished memorandum opinion, issued March 5, 1996 (Docket No. 172383).

[4] 454 Mich 907 (1997).

mine whether the plaintiff has pleaded facts justifying application of an exception to governmental immunity. *Wade v Dep't of Corrections*, 439 Mich 158, 162-163; 483 NW2d 26 (1992); *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). While review under MCR 2.116(C)(8) allows only consideration of the pleadings, our review under MCR 2.116(C)(7) and (10) also must include consideration of all documentary evidence submitted by the parties. *Patterson v Kleiman*, 447 Mich 429; 526 NW2d 879 (1994).

Under MCR 2.116(C)(8), we accept all well-pleaded factual allegations as true and construe them in a light most favorable to the nonmoving party. *Wade, supra; Skinner v Square D Co*, 445 Mich 153, 161-162; 516 NW2d 475 (1994). MCR 2.116(C)(10) motions are properly granted when there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *Skinner, supra.* Under MCR 2.116(C)(10), the nonmovant has the burden of providing evidence to support the conclusion that there is a genuine issue of material fact. *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 113-115; 469 NW2d 284 (1991). See also MCR 2.116(G)(4). When reviewing summary disposition under MCR 2.116(C)(7), the contents of the complaint are accepted as true unless specifically contradicted by affidavits or other documentation submitted by the moving party. *Sewell v Southfield Public Schools*, 456 Mich 670, 674; 576 NW2d 153 (1998).

With these standards as a guide, I turn to a discussion of governmental immunity and the public building exception to governmental immunity, and their applicability to this case.

### B. GOVERNMENTAL IMMUNITY

Governmental agencies, like the city of Detroit and its agents, generally are immune from tort liability for actions taken while performing governmental functions. MCL 691.1407(1); MSA 3.996(107)(1).[5]

The act's broad grant of immunity is subject to five narrowly drawn statutory exceptions, including the public building exception.[6] Since *Ross v Consumers Power Co, supra,* the defining case concerning interpretation of the governmental tort liability act, this Court has broadly interpreted immunity under the act and has narrowly construed the exceptions to immunity. With this basic principle of interpretation in mind, I once again explore the scope of the public building exception.

### C. PUBLIC BUILDING EXCEPTION

The public building exception allows suits against governmental agencies where a dangerous or defective condition of the building itself is alleged to have

---

[5] Specifically, the governmental tort liability act provides that

all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1); MSA 3.996(107)(1).]

[6] The other four exceptions are (1) the highway exception, MCL 691.1402; MSA 3.996(102), (2) the negligent use of a government-owned motor vehicle exception, MCL 691.1405; MSA 3.996(105), (3) the proprietary function exception, MCL 691.1413; MSA 3.996(113), and (4) the government hospital exception, MCL 691.1407(4)(b); MSA 3.996(107)(4)(b).

caused the injuries and where certain other criteria are met.[7] The act states:

> Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition. [MCL 691.1406; MSA 3.996(106).]

While the language of the exception is fairly straightforward, it has been difficult to state a single test that controls its application, especially in cases where the adequacy of supervision or the injured party's contributing causation is involved. Our cases interpreting the public building exception, however, do reveal certain general principles that are helpful in determining whether and under what circumstances the exception applies.

One of the overarching principles, repeatedly cited by this Court in our decisions discussing the public building exception since *Ross*, is the maxim that in enacting the building exception, the Legislature intended to impose a duty to maintain the safety *of*

---

[7] This Court has previously noted that to apply the public building exception, a plaintiff must prove the following: (1) that a governmental agency is involved, (2) that the public building in question is open to the public, (3) that a dangerous or defective condition of the public building itself exists, (4) that the governmental agency had actual or constructive notice of the alleged defect, and (5) that the governmental agency failed to remedy the alleged defect after a reasonable period of time. *Hickey v Michigan State Univ (On Resubmission)*, 439 Mich 408, 421; 487 NW2d 106 (1992). Most of our public building exception decisions, like this case, involve interpretation of the third prong of this five-part test.

public buildings, not necessarily safety *in* public buildings. *Reardon v Dep't of Mental Health*, 430 Mich 398, 415; 424 NW2d 248 (1988). Thus, the alleged defect must be a defect of the building itself and not merely a transient condition, such as accumulated grease or oil on a hallway floor, *Wade v Dep't of Corrections, supra*, or inadequate supervision in an otherwise adequate facility, *Schafer v Dep't of Mental Health*, 430 Mich 398, 417; 424 NW2d 248 (1988); *Hickey v Michigan State Univ (On Resubmission)*, 439 Mich 408, 424; 487 NW2d 106 (1992).

A public building may be defective because of improper maintenance or repair, faulty construction, absence of safety devices, or improper design. *Bush v Oscoda Area Schools*, 405 Mich 716, 730; 275 NW2d 268 (1979). As recently noted in *de Sanchez v Dep't of Mental Health*, 455 Mich 83; 565 NW2d 358 (1997), this Court has had some difficulty discerning when a design defect may actually constitute a defect in a public building sufficient to invoke the public building exception.

While a design that in some way impedes the ability to supervise users of the building might in some cases constitute a design defect, the design must directly contribute to the injuries. *Hickey, supra* at 424. In other words, "where the essence of a tort claim is negligent supervision, a plaintiff cannot transform the claim into a building-defect claim merely because a superior building design would have improved the ability to supervise." *de Sanchez, supra* at 95.

Although language in some of this Court's previous decisions, such as *Schafer* and *Hickey, supra*, may have appeared to suggest that where adequate supervision could have prevented the injuries, the building

exception was inapplicable, this Court made clear in
*de Sanchez* that where the essence of a tort claim is a
defective building, summary disposition may not be
granted merely by claiming that proper supervision
would have prevented the injuries. Instead, as long as
a physical defect in the building itself coincides to
cause the injury, the public building exception might
apply even if negligent supervision is also involved.

Another important principle, first discussed in
*Bush, supra,* is that courts must examine whether the
building is defective in light of the uses or activities
for which it is specifically assigned. *Bush* involved a
high school student who was seriously burned by an
explosion during a chemistry class that was being
temporarily held, because of overcrowding, in a gen-
eral classroom lacking laboratory safety equipment.
This Court held that the trier of fact must determine
whether the room was defective when used as a
chemistry room, and if so, whether the defect was a
cause of the plaintiff's injuries. Regarding the impor-
tance of examining the intended use, this Court
stated:

> [T]he lack of certain safety devices did not render the
> classroom defective per se; it is ordinarily unnecessary to
> install laboratory safety equipment in classrooms. In deter-
> mining whether a place is safe, one must consider the use
> or purpose it serves. A building may be safe for one use or
> purpose, but not for another. A school is not a school
> because it is called one, but because it is used and func-
> tions as one. If a hospital is converted into a prison, the
> building must be maintained as a safe prison, not as a safe
> hospital. The room in which [the plaintiff] was injured had
> by use become a physical science room, and therefore had
> to meet the standards of a physical science room although
> it had once been a mathematics room. [*Bush, supra* at 732.]

The principle of intended use also controlled in *Lockaby, supra.* That case, like this one, involved an alleged defect resulting in injuries to an individual in a holding cell. In *Lockaby*, the injured individual was known to have a mental condition and was placed in a cell specifically designated for such individuals. He suffered an injury to his spinal cord after striking his head against the cell wall. His complaint alleged, among other things, that a lack of adequately padded walls in the cell constituted a defect. Citing *Bush*, this Court held that the lack of adequately padded walls might be a defect in a cell designated to hold individuals with mental conditions. Consequently, we held that the plaintiff had pleaded a cause of action so as to avoid governmental immunity.

Conversely, in other prison suicide cases, where the cell was intended for temporary detention or for holding a general population and was not specifically equipped to prevent suicides, this Court has held that otherwise benign installations used by the arrestee to hang himself were not defects. *Hickey* and *Jackson, supra.* In *Hickey*, an intoxicated individual hanged himself from the bolts securing a heating unit in a temporary detention cell at the Michigan State University Department of Public Safety. Explaining that the intended use principle announced in *Bush* controlled, this Court stated:

> MSU's holding cell was specifically intended and assigned for temporary detention. Even the plaintiff did not argue that the cell was used for any purpose except the temporary lockup of arrestees. We must, therefore, determine if this cell, with the installation of the heating unit, specifically used and assigned for temporary detention, was dangerous or defective. We hold that it was not. [*Hickey* at 425-426.]

After discussing the impossibility of making a jail or holding cell suicide-proof, we further explained:

> There would seem to be no limits on the possibility of suicide in an ordinary lock-up cell, particularly one that was only being used for temporary custody, even the temporary custody of an inebriated individual. To suggest that any physical feature of a jail cell, otherwise benign, that can conceivably become a part of a plan of one who is desperately driven to self destruction can become a "dangerous or defective condition" under the public building exception statute, simply crosses the outer limits of any reasonable reading of the intent of that statute when considered in the context of its history, purpose, and wording. [*Id.* at 426.]

Likewise, this Court in *Jackson, supra,* found that a cell with exposed overhead bars was not defective for the specific use and purpose for which it was assigned, that of a general holding cell. As in this case, the decedent in *Jackson* hanged himself from exposed overhead bars. Even though Mr. Jackson, unlike the decedent in *Hickey,* was known to be suicidal, that fact did not transform the intended use of the cell from that of a general holding cell to that of a cell designated for suicidal prisoners. The designated use as a general cell controlled.

In summary, a defect will be found only where the alleged problem relates to safety of a public building, not just to safety in a public building. Thus the alleged defect must be one of the building itself. While an improper design may constitute a defect, no defect will be found if the essence of the tort involves inadequate supervision. Further, courts must examine the intended use and the specific designated purpose of the building or room in order to determine whether a defect exists. Thus, while overhead bars in a gen-

eral holding cell are not a defect, *Jackson, supra,* exposed overhead bars might constitute a defect in a cell specifically designed or equipped to prevent suicide by the installation of wire mesh.

### III. ANALYSIS

#### A. BUILDING DEFECT

The determinative question in this case is whether the installation of mesh over the overhead crossbars, in order to help deter suicides, renders the cell a suicide-deterrent cell, specifically assigned to deter hangings from the overhead crossbars. Because I think that these cells, with the installed mesh, were intended to function as suicide-deterrent cells, I would hold that the public building exception applies. The plaintiff has presented evidence sufficient to establish that this suicide-deterrent cell was defective in light of its intended purpose because the mesh designed to prevent access to the overhead bars was torn away. The plaintiff also has presented evidence that the defendants had notice and a reasonable time to repair the defect and did nothing. Consequently, the pleadings and supporting documentary evidence are sufficient to allow the plaintiff's claim to go forward.

While the cell involved here is typically used to hold a general population and functions as a general holding cell, once the mesh was installed to deter suicides, it functioned in fact as a suicide-deterrent cell. As we noted in *Bush,* "[i]f a hospital is converted into a prison, the building must be maintained as a safe prison, not as a safe hospital." *Id.* at 732. Similarly, once this cell was converted to a suicide-deterrent cell, the city was obligated to maintain it as a safe sui-

cide-deterrent cell, in that it had a duty to maintain the specific safety feature designed to accomplish this purpose in good repair.[8]

As a suicide-deterrent cell, the analysis this Court applied in *Lockaby* controls. A defect in a feature designed to protect the inmate or arrestee from his own devices comes within the building exception if the plaintiff can show that the defect was a contributing cause of the injuries. As we noted in *de Sanchez, supra,* the fact that other causes also might be involved, such as inadequate supervision or the arrestee's own actions toward self-destruction, does not necessarily preclude application of the public building exception.[9]

---

[8] The dissent insists that the character of the cell involved here is identical to that at issue in *Jackson, supra,* i.e., it functions as a general holding cell and not as a suicide-deterrent cell. The dissent's analysis suggests that the intended use of these general cells, all equipped to be suicide deterrent, changes with each detainee ushered into them, depending upon that detainee's demonstrated proclivity toward suicide. This illogical result is not required by this Court's opinion in *Bush,* as suggested by the dissent. *Bush* held that where the defendant knew that a general classroom would be used to conduct a chemistry class, it might be defective if it was not equipped with appropriate safeguards necessary for chemistry experiments. Similarly, in this case, where the defendants knew that the general holding cells would be used to hold a general detainee population, including some suicidal individuals, when it was, in fact, used to hold a suicidal individual and did not contain appropriate safeguards, it was defective. Once again, all the cells were, in fact, used and equipped to hold a general detainee population and a population with a known risk of suicide. Their intended use was to function as general suicide-deterrent cells.

[9] Consequently, the defendants' focus on the decedent's actions as the real cause of his death misses the mark. While I recognize that the language in *Hickey* concerning the impossibility of making a suicide-proof cell can be read to suggest that an individual's own efforts at self-destruction preclude a finding that an otherwise benign feature might be a defect, this is not necessarily determinative. If a cell is designed or equipped to be suicide deterrent, lack of compliance with reasonable safety measures could indeed constitute a defect of the building when viewed in light of its intended use. For example, the question in *Bush* was not whether the classroom could be made accident-proof, but whether

B. NEGLIGENCE

1

I note that merely because a plaintiff is able to plead a claim to avoid governmental immunity, in this case on the basis of the public building exception, does not necessarily mean that the defendants are liable. Our conclusion that the public building exception applies to plaintiff's claim merely establishes that the city undertook a duty to maintain this suicide-deterrent cell in good repair. The fact that the city has this general duty does not necessarily establish a duty owed to this particular plaintiff in the facts of this case. Establishing a building-defect claim circumventing governmental immunity does not negate traditional tort law principles. Perhaps a statement of the obvious, plaintiff still must demonstrate the elements of her negligence claim.

2

In this case, the defendants filed their motion for summary disposition not only on the ground of governmental immunity, but also on the ground that there was no genuine issue of material fact. MCR 2.116(C)(10). The trial court's order granting defendants' motion for summary disposition cited not only MCR 2.116(C)(7), the governmental immunity provision, but also cited MCR 2.116(C)(10). Although the Court of Appeals did not reach this alternative ground, except with respect to the gross negligence

lack of reasonable safety devices contributed to the injuries. Certainly creative and unforeseen implements of self-destruction cannot always be eliminated. However, when a cell is intended to function as a suicide-deterrent cell, a defect may exist where reasonable steps are not taken to maintain its safety features in good repair.

claim against defendant Heatlie, I would hold that summary disposition under MCR 2.116(C)(10) was proper because there was no genuine issue of material fact on the underlying negligence claim.

In her negligence claim, the plaintiff has to establish that the defendant had a duty to this particular decedent, that it breached that duty by placing the decedent in the defective cell, and that the breach was a proximate and factual cause of the decedent's death. A defendant does not owe a duty to an unforeseeable plaintiff. In this case, plaintiff failed to present a genuine issue of material fact establishing the existence of a duty owed to plaintiff's decedent because defendants were actually unaware, and it was not reasonably foreseeable, that the decedent was suicidal before placing him in the defective cell. See *Hickey, supra* at 438-439.

In support of their motion for summary disposition, which was brought after the close of extensive discovery, defendants city of Detroit and Officer Heatlie offered the deposition testimony of Officers Heatlie and Wylie. Both officers testified that the decedent gave no indication that he was suicidal. Conversely, the plaintiff presented nothing to refute this evidence and did not offer any evidence that the suicide was reasonably foreseeable.

Where the events leading to injury are not foreseeable, there is no duty, and summary disposition is appropriate. *Groncki v Detroit Edison Co*, 453 Mich 644, 657; 557 NW2d 289 (1996). In this case, the defendants had no notice that the decedent might attempt suicide, and therefore they cannot be held responsible for failing to prevent the decedent's death. This death was not reasonably foreseeable.

Tragic as it was, defendants cannot be held responsible for the unforeseen suicide of the plaintiff's decedent. Consequently, I would uphold the trial court's granting of summary disposition to the defendants under MCR 2.116(C)(8).

### IV. CONCLUSION

While the plaintiff has established evidence sufficient to allow her claim to go forward under the public building exception to governmental immunity, the underlying negligence claim fails because it was not reasonably foreseeable that the decedent would attempt suicide.

The torn mesh rendered this cell, which was intended to function in fact as a suicide-deterrent cell, defective within the meaning of the public building exception. The evidence also supports a conclusion that the city had notice of the torn mesh and had reasonable time in which to repair it.

Although summary disposition was improper on the ground of governmental immunity, it is proper on the underlying negligence claim. The uncontroverted evidence at the close of discovery and as presented at the summary disposition stage showed that defendants could not have suspected that the decedent was suicidal. Consequently, there was no duty to prevent this unforeseeable death.

For these reasons, I would reverse that portion of the Court of Appeals decision upholding summary disposition for the defendants on the ground of governmental immunity and would affirm summary disposition on the underlying negligence claim.

TAYLOR, J. (*concurring in part and dissenting in part*). I agree with the lead opinion's conclusion that

the trial court did not err in granting defendants'
motion for summary disposition because the plaintiff
could not establish negligence as a matter of law. I
therefore join part III(B) of the lead opinion. However,
I disagree with the lead opinion's conclusion that the
public building exception to governmental immunity
applies to this case.

Plaintiff's decedent was placed in a holding cell
after he was arrested. Because he had been coopera-
tive, the decedent was placed in the only empty cell
that was equipped with a toilet. Unfortunately, there
was also a hole in the wire mesh that had been previ-
ously installed to prevent detainees from hanging
themselves on the overhead bars. Unexpectedly, by
the acknowledgment of all parties, the decedent
endeavored to gain access to the overhead bars
through this hole. He was successful and hanged him-
self. Suit followed, and defendants moved for sum-
mary disposition, claiming governmental immunity.
The trial court granted defendants' motion for sum-
mary disposition, and the Court of Appeals affirmed.

The question at issue here is whether the public
building exception[1] to governmental immunity[2]
applies under these undisputed facts. In every

---

[1]    Governmental agencies are liable for bodily injury and property
damage resulting from a dangerous or defective condition of a pub-
lic building if the governmental agency had actual or constructive
knowledge of the defect and, for a reasonable time after acquiring
knowledge, failed to remedy the condition or to take action reason-
ably necessary to protect the public against the condition. [MCL
691.1406; MSA 3.996(106).]

[2]    Except as otherwise provided in this act, all governmental agen-
cies shall be immune from tort liability in all cases wherein the
government agency is engaged in the exercise or discharge of a
governmental function. [MCL 691.1407(1); MSA 3.996(107)(1).]

instance where a plaintiff brings a tort claim against a governmental entity on the basis of the building defect exception to governmental immunity, a two-step analysis is warranted. The first question is whether the plaintiff's cause of action invokes an exception to governmental immunity. If this requirement is met, the plaintiff must then establish the elements of his underlying cause of action. See *Canon v Thumudo*, 430 Mich 326, 335; 422 NW2d 688 (1988) (which cautions against confusing separate inquiries into immunity and negligence).

The lead opinion concludes that this case qualifies for application of the public building exception to governmental immunity. The foundation of the lead opinion's analysis is the notion that the cell at issue here was converted from a nondefective general holding cell to a defective suicide-deterrent cell by reason of the installation of wire mesh preventing access to the overhead bars of the cell and the subsequent failure to repair a hole in the mesh before the decedent hanged himself. I disagree.

Pursuant to *Bush v Oscoda Area Schools*, 405 Mich 716, 731-732; 275 NW2d 268 (1979), whether there was, in fact, a building defect, warranting application of the public building exception to governmental immunity, depends on the use to which the area of the building at issue was put. In *Bush*, a nonlaboratory classroom was used to teach a chemistry class. Because the classroom was not normally used in this manner, it failed to have various safety features, including a safety shower, ventilation or exhaust hoods, sinks, enclosed storage areas, stationary laboratory desks, and water and gas outlets. *Id.*,

p 725. Unfortunately, an accident occurred during a chemistry class, and the plaintiff was injured.

Bringing suit, the plaintiff alleged, in part, that the absence of appropriate safety devices rendered the classroom unsafe for science classes and therefore that the classroom was defective, triggering the public building exception to governmental immunity. This Court stated:

> To be sure, the lack of certain safety devices did not render the classroom defective per se; it is ordinarily unnecessary to install laboratory safety equipment in classrooms. In determining whether a place is safe, one must consider the use or purpose it serves. A building may be safe for one use or purpose, but not for another. . . . The room in which Foxworth was injured had by use become a physical science room, and therefore had to meet the standards of a physical science room although it had once been a mathematics room. [*Id.*, p 732.]

Thus, under the rationale of *Bush*, cells such as the one at issue are required to meet standards consistent with their use in order to avoid the defective building exception.[3] This means when it is being used as a general holding cell, i.e., a cell to be used for those such as this plaintiff who give no indication of suicidal tendencies, that the standards for such a cell (that is a nonsuicide-deterrent cell) are the standards to be employed in determining whether the cell was defective. This the lead opinion fails to do, instead

---

[3] I note that I take no position on whether the absence of a safety device itself constitutes a public building defect. This contention has not been endorsed in a decision from this Court subsequent to *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984). I rely on *Bush* only for its holding that it is the intended use of the building that controls the analysis.

saying merely that if the suicide prevention "add-ons" to the cell are in any way defective there is a cause of action if a detainee commits suicide in it without regard to how the cell really was being used. This cannot be reconciled with *Bush*.

Moreover, in *Jackson v Detroit*, 449 Mich 420; 537 NW2d 151 (1995), this Court concluded that a similar cell was not defective, despite the fact that the plaintiff's decedent was known to be suicidal at the time and the overhead bars of the cell were completely exposed, i.e., no wire mesh had been installed. Relying on *Hickey v Zezulka (On Resubmission)*, 439 Mich 408; 487 NW2d 106 (1992), the Court concluded that the plaintiff's claim related more to safety in a public building rather than to the safety of the building itself. *Jackson, supra*, 449 Mich 428-429. The Court held that the statute did not create an exception to governmental immunity in instances where the decedent utilized an otherwise benign physical feature as a means of committing suicide. *Id.*

The Court went on, however, to conclude that the plaintiff had presented a prima facie allegation that the city of Detroit, by a policy of inaction, i.e., a failure to incorporate suicide-deterrent features in these cells in light of the historical suicide risk, had been "deliberately indifferent" to the safety of its detainees.[4] Consequently, this Court concluded that it was

---

[4] It should be noted that under the current "deliberate indifference" standard necessary to prevail in a § 1983 action, the record appears devoid of any evidence that would allow plaintiff to prevail. See *Bryan Co, Oklahoma Bd of Co Comm'rs v Brown*, 520 US 397, 415; 117 S Ct 1382; 137 L Ed 2d 626 (1997) ("Congress did not intend municipalities to be held liable unless *deliberate* action attributable to the municipality directly caused a deprivation of federal rights"); *Simmons v Philadelphia*, 947 F2d 1042, 1064 (CA 3, 1991) (a plaintiff must show that responsible

possible that the plaintiff might prevail against defendant through an action based on 42 USC 1983.

In the cell at issue, defendant had installed wire mesh as an additional feature that, having a hole in it, the lead opinion now would find rendered the cell itself defective. However, the fact that defendant took action that could negate a finding that it was deliberately indifferent to the safety of its detainees does not demonstrate that the intended use of the cell had changed. Furthermore, where these cells without wire mesh were previously found in *Jackson* to be without defect when housing a suicidal detainee, it logically follows that a similar cell is not defective, despite the fact that the wire mesh installed still allowed access to the overhead bars because of a rip in the mesh. While in the instant case defendant had taken the extra step of adding mesh covering the overhead bars, this Court's decision in *Jackson* demonstrates that the cell already met the standards consistent with its use. As in *Jackson*, the fact that the decedent utilized the otherwise benign physical feature of the cell to commit suicide did not demonstrate that the cell itself contained a defect as contemplated by the Legislature.[5]

---

policymakers were aware of the number of suicides in city lockups and of the alternatives for preventing them, but either deliberately chose not to pursue alternatives or acquiesced in longstanding policy or custom of inaction). As is clear, historical data of prison suicide alone is not sufficient to demonstrate liability under 42 USC 1983.

[5] The lead opinion fails to appreciate our discussion of the interplay between *Bush* and *Jackson*. *Bush* stands for the proposition that the intended use of the building controls whether it is defective. *Jackson* demonstrated that these cells are intended to accommodate a general detainee population and that even if the detainee was known to be suicidal, accessability to the overhead bars and the detainee's act of hanging himself does not demonstrate that the cell is defective. The lead opinion now effectively would rule by judicial fiat that because this general

Under *Bush* and *Jackson,* I would conclude that the cell at issue was not defective. Therefore, there being no defect, the public building exception to governmental immunity is not applicable to this case, and I would hold that the trial court did not err in granting defendants' motion for summary disposition on this basis as well.

BOYLE and WEAVER, JJ., concurred with TAYLOR, J.

BRICKLEY, J. (*dissenting*). I concur in the conclusion that plaintiff has stated a claim in avoidance of governmental immunity under the public building exception. However, I dissent from the lead opinion's resolution of the plaintiff's negligence claim against the defendants city of Detroit and Detroit Police Department. The trial court's grant of summary disposition to the defendants and the Court of Appeals affirmance of that order were clearly premised on the plaintiff's inability to plead in avoidance of governmental immunity. The separate issue, whether defendants owed plaintiff a duty under these circumstances, was, therefore, not addressed below.[1] Nevertheless, the lead opinion, without affording the parties the opportunity to brief the matter, and without meaningful analysis, rules sua sponte that plaintiff's claim is

---

detainee population, in other cases, has been shown to have a known risk of suicide these cells are intended to function as suicide-deterrent cells and the failure to maintain "appropriate" suicide-deterrent features strips the city of governmental immunity. *Ante,* p 709, n 8. Moreover, to the extent the lead opinion attempts to cloak that holding, by suggesting that the installation itself of the mesh changed the use of the cell, *Bush* effectively demonstrates the fallacy of that argument by finding that "[t]he room in which Foxworth was injured had *by use* become a physical science room . . . ."

[1] The Court of Appeals discussion of defendants' duty was limited to the plaintiff's gross negligence claim against Officer Ralph Heatlie.

barred because defendant owed the deceased no duty as a matter of law. It bears repeating that

> [t]he adversary system disciplines the judicial inquiry and serves to crystallize the difficult choices with which we generally find ourselves confronted. When an issue is not presented in the form of a keenly contested and discrete controversy, a court is denied a valuable resource that contributes both to the legitimacy and wisdom of its judgment. [*People v Butler*, 413 Mich 377, 393-394; 319 NW2d 540 (1982) (opinion of LEVIN, J.).]

The scope of the duty owed a citizen by his jailer is complex and of great importance. However, it is not properly before the Court. Accordingly, I would order supplemental briefing or remand the matter to the circuit court for further proceedings.[2]

CAVANAGH and KELLY, JJ., concurred with BRICKLEY, J.

---

[2] The lead opinion's resolution of the negligence issue arguably would rob the governmental immunity issue of its precedential force because its resolution is no longer necessary to the outcome of the case.