*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NANCY HINDENACH, Individually and as
Guardian of JOHNATHAN HINDENACH, a
legally incapacitated person, and ROBERT
HINDENACH,

       Plaintiffs-Appellants,

v

OLIVET COLLEGE and GARY WERTHEIMER,

       Defendants-Appellees.

UNPUBLISHED
March 19, 2019

No. 340540
Eaton Circuit Court
LC No. 2011-001596-NO

Before: RIORDAN, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

      In this negligence action, plaintiffs appeal as of right the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

      Plaintiff Johnathan Hindenach has a history of mental illness with a diagnosis of major depression with psychotic features for which he had been hospitalized in 2001 and 2004. In 2008, Johnathan matriculated in the art program at defendant Olivet College. Johnathan enrolled in an intensive learning course which was taught by defendant Gary Wertheimer. The course culminated in a $2\frac{1}{2}$-week visit to Italy. Before leaving for the trip, Johnathan struggled to give a presentation to the class, which he attributed to an exacerbation of his mental health issues. Johnathan was taking Zyprexa, an antipsychotic medication, and Paxil, an antidepressant medication, at the time.

      The trip began on May 2, 2009, in Florence, Italy, when Johnathan was 24 years old. Johnathan testified that he was suffering mentally from jet lag, exhaustion, and culture shock. He did not inform Wertheimer of those issues. Johnathan engaged in the extensive activities required of the class for the first three days of the trip without issue. On May 5, 2009, Johnathan went out with his fellow classmates to a night club, where Johnathan engaged in behavior that led to teasing. Johnathan testified that he thought he was being bullied by his two male

-1-

roommates. On May 6, 2009, Johnathan had to leave a museum because he was uncomfortable with all of the people, and later that day, while on an historic bridge, Johnathan asked Wertheimer if he could walk ahead because he was not feeling well. Wertheimer agreed. That night, at dinner, Johnathan ordered fried cow brains for dinner, an Italian delicacy, which led to additional teasing by his roommates.

After dinner, back at the hotel, Johnathan went with his roommates to a park where his roommates smoked marijuana. Johnathan testified that he mimicked partaking in the activity and then faked being high. Shortly thereafter, Johnathan began developing paranoid delusions that his roommates wanted to kill him. A scuffle broke out in the hallway of the hotel when Johnathan attempted to leave. Wertheimer was alerted to the issue, saw the fight between Johnathan and his two roommates, and ordered them to let Johnathan go. Once freed, Johnathan fled into the streets of Florence, where he eventually encountered and killed an Italian citizen. Johnathan was found by an Italian court not to be criminally responsible for the man's death due to insanity, but was ordered to spend at least five years in a judiciary psychiatric hospital.

Nancy Hindenach, Johnathan's mother and guardian, brought this lawsuit alleging that defendants had negligently failed to monitor Johnathan's mental health ultimately leading to the tragic event in Italy, his incarceration, and hospitalization. The litigation proceeded slowly, requiring the parties to wait until Johnathan finally was released and was able to be deposed. Following his deposition, defendants moved the trial court for summary disposition of the negligence claims, arguing that summary disposition was warranted because the claim was barred by the wrongful-conduct rule, that defendants did not have a duty, and plaintiffs had not proven legal causation. The trial court agreed with defendants that they did not have a duty and that there was no evidence of legal causation since the harm suffered by Johnathan was not foreseeable. The trial court did not address the wrongful-conduct rule issue. Thus, it granted defendants' motion for summary disposition. This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiffs argue that the trial court erred by granting summary disposition in favor of defendants. We disagree.

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Joseph v Auto Club Ins Assoc*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id*. "A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules." *Bennett v Detroit Police Chief*, 274 Mich App 307, 317; 732 NW2d 164 (2006). "Generally, whether a duty exists is a

question of law for the court and subject to de novo review." *Finazzo v Fire Equip Co*, 323 Mich App 620, 625; 918 NW2d 200 (2018). "Proximate cause is usually a factual issue to be decided by the trier of fact, but if the facts bearing on proximate cause are not disputed and if reasonable minds could not differ, the issue is one of law for the court." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 393; 808 NW2d 240 (2010).

## B. LAW & ANALYSIS

"To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Chelik v Captiol Transp, LLC*, 313 Mich App 83, 89; 880 NW2d 350 (2015) (quotation marks omitted). "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff. 'It is axiomatic that there can be no tort liability unless defendants owed a duty to plaintiff.'" *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004), quoting *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 262; 571 NW2d 716 (1997). "This analysis requires a determination whether the relationship of the parties is the sort that a legal obligation should be imposed on one for the benefit of another." *Graves v Warner Bros*, 253 Mich App 486, 492; 656 NW2d 195 (2002). "In determining whether to impose a duty, this Court evaluates factors such as: the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). "Frequently, the first component examined by the court is the foreseeability of the risk." *Buczkowski v McKay*, 441 Mich 96, 101; 490 NW2d 330 (1992). "Only after finding that a duty exists may the factfinder determine whether, in light of the particular facts of the case, there was a breach of the duty." *Murdock*, 454 Mich at 53.

"Of particular import to the present appeal is the principle that, in general, there is no legal duty obligating one person to aid or protect another." *Graves*, 253 Mich App at 493. "Generally, an individual has no duty to protect another who is endangered by a third person's conduct." *Murdock*, 454 Mich at 54. "The rationale underlying this general rule is the fact that '[c]riminal activity, by its deviant nature, is normally unforeseeable.'" *Graves*, 253 Mich App at 493, quoting *Papadimas v Mykonos Lounge*, 176 Mich App 40, 46-47; 439 NW2d 280 (1989). This Court previously has "emphasized that under all ordinary and normal circumstances, in the absence of any reason to expect the contrary, the actor may reasonably proceed upon the assumption that others will obey the criminal law." *Graves*, 253 Mich App at 493 (quotation marks and brackets omitted). "Where the events leading to injury are not foreseeable, there is no duty, and summary disposition is appropriate." *Johnson v Detroit*, 457 Mich 695, 711; 579 NW2d 895 (1998).

Considering the facts in the light most favorable to plaintiffs, as this Court must, we find defendants did not have a duty to prevent the injuries suffered by Johnathan. Before going on the trip, Johnathan filled out several forms informing defendants only that he was prescribed Zyprexa and Paxil, antipsychotic and antidepressant medications. There was no indication on any form that Johnathan had psychotic tendencies. On one form, Johnathan checked boxes suggesting that he was suffering from depression and anxiety. There was no evidence that Wertheimer ever saw that form, considering it was prepared during Johnathan's visit to Olivet's

Wellness Center. While Johnathan struggled with a presentation before leaving for Florence, which he attributed to increasing mental stressors, those present believed Johnathan merely was anxious about speaking in front of the class.

There is nothing in the record indicating that Johnathan would kill someone, be incarcerated, and then forcibly hospitalized for many years as a result of going on the trip to Italy. The Olivet administration was aware only that Johnathan was suffering from depression and anxiety and was prescribed medications for those ailments, including an antipsychotic. As to Wertheimer, he was aware of Johnathan's medications, that he was feeling anxious during a presentation, had issues during the trip, and claimed he feared for his life while fighting with his roommates. While it may have been foreseeable that Johnathan might injure himself in some manner, it plainly was not foreseeable that Johnathan would kill a stranger and then suffer the alleged damages in the form of incarceration and hospitalization for his actions.[1] *Johnson*, 457 Mich at 711. Wertheimer and Olivet were permitted to "reasonably proceed upon the assumption that [Johnathan would] obey the criminal law." *Graves*, 253 Mich App at 493 (quotation marks omitted). Because "the events leading to injury [were] not foreseeable, there [was] no duty, and summary disposition [was] appropriate." *Johnson*, 457 Mich at 711.

Plaintiffs alternatively argue that Wertheimer's duty arose when he voluntarily engaged in helping Johnathan when he tried to break up the fight occurring between Johnathan and his roommates. Plaintiffs are correct that "[a] party may be under a legal duty when it voluntarily assumes a function that it is not legally required to perform." *Zychowski v AJ Marshall Co, Inc*, 233 Mich App 229, 231; 590 NW2d 301 (1998). That principle requires that "one who voluntarily assumes a duty has an obligation to exercise some degree of care and skill in the performance of what he has undertaken." *Premo v Gen Motors Corp*, 210 Mich App 121, 123; 533 NW2d 332 (1995).

Nevertheless, plaintiffs' argument is without merit. Assuming without deciding that Wertheimer's interference in the fight between the three men was somehow an assumption of the responsibility to ensure Johnathan's safety, that responsibility still was limited to foreseeable harms. As this Court held in *Babula v Robertson*, 212 Mich App 45, 51-52; 536 NW2d 834 (1995), even where a babysitter voluntarily assumed the responsibility of caring for a child, the babysitter did not have a duty to protect the child from the entirely unforeseeable harm of the babysitter's husband sexually molesting the child. Thus, even if Wertheimer voluntarily

---

[1] This difference distinguishes recent cases from foreign jurisdictions holding that a college can be responsible for protecting students from potential suicide where they have been made aware of previous suicidal behaviors or ideations. See e.g., *Dzung Duy Nguyen v Mass Institute of Technology*, 479 Mass 436, 452-455; 96 NE3d 128 (2018). Similarly, a case where a student had an exhibited history of schizophrenia, threatened violence to other students, and then did injure another student, simply is not comparable to the facts of this case because there was no evidence that Johnathan was about to kill a total stranger. *Regents of Univ of Cal v Superior Court*, 4 Cal 5th 607, 634; 413 P3d 656 (2018) ("We emphasize that a duty of care is not the equivalent of liability.").

accepted some responsibility for Johnathan's well-being by extracting him from the hallway fight, Wertheimer's duty did not extend to protecting Johnathan from going on the street, eventually killing someone, and being imprisoned or hospitalized. See *id*. Once again, because the events leading to the harm suffered were so outside the range of reasonably probable occurrences, Wertheimer did not have a duty to protect Johnathan therefrom. See *Johnson*, 457 Mich at 711.

Affirmed.[2]

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Anica Letica

---

[2] Although now moot, we also note that the lack of foreseeability of the events leading to Johnathan's harms also warranted summary disposition pursuant to plaintiffs' inability to prove legal causation. *Shinholster v Annapolis Hosp*, 471 Mich 540, 546; 685 NW2d 275 (2004) (holding that a legal cause is "a foreseeable, natural, and probable cause."). As discussed, *supra*, considering the evidence in the light most favorable to plaintiffs, Olivet and Wertheimer were aware that Johnathan suffered from depression and anxiety, took medications for it, and that he had issues during the trip, resulting in a final altercation with his roommates in the hallway of the hotel. As also discussed, even being aware of those things and making any and all inferences in plaintiffs' favor, it simply was not foreseeable that Johnathan would confront an Italian citizen, kill him, and then be imprisoned and hospitalized for many years. Thus, defendants' alleged negligence was not "a foreseeable, natural, and probable cause" of Johnathan's injuries. *Id*. Consequently, summary disposition was warranted and properly granted. See *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496-497; 668 NW2d 402 (2003).

Defendants' argument that we also could affirm because plaintiffs' action is barred by the wrongful-conduct rule also has been rendered moot and we decline to consider it.